CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

08/29/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:18-cr-00030-001 |
| v. | |
| | MEMORANDUM OPINION |
| ANTONIO PAREDES PEREZ, | |
| *Defendant.* | SENIOR JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion to Dismiss his Indictment for reentry of a removed alien in violation of 8 U.S.C. § 1326(a), seeking to collaterally attack the underlying expedited removal order pursuant to 8 U.S.C. § 1326(d). (Dkt. 32 at l). For the reasons set out below, the Court will deny Defendant's Motion to Dismiss his Indictment.

## I.    FACTS AND PROCEDURAL HISTORY

Defendant is a citizen of Mexico. He does not claim to be a citizen of the United States. Defendant first came to the United States from Mexico in 2005 when he was approximately 13 years of age. (Dkt. 32, Ex. 3; Dkt. 39, Ex. 5). On February 24, 2005, he was detained at the border but was permitted to voluntarily return to Mexico. (Dkt. 32 at 1). He was subsequently detained a second time on March 21, 2013. (Dkt 32, Ex. 1; Dkt. 39 at 1, Ex. 5). An expedited removal order was issued March 26, 2013, and he was removed on March 27, 2013. (Dkt. 32, Ex. 1). When Defendant attempted another return, his prior expedited removal order was reinstated on October 23, 2013, and he was removed October 24, 2013. (Dkt. 32, Ex. 2). Defendant subsequently returned to and remained in the United States. (Dkt. 39, Ex. 5).

The Defendant's expedited removal order from March 2013 found that he was inadmissible under Immigration and Nationality Act ("INA") Section 212(a)(7)(A)(i)(I) (8 U.S.C.

§ 1182(a)(7)(a)(i)(I)) ("Documentation requirements"), in that "[y]ou are not a citizen or national of the United States," "[y]ou are a native of MEXICO and a citizen of MEXICO," and "[y]ou are an immigrant not in possession of a valid immigration visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act." (Dkt. 32, Ex. 1). As part of the expedited removal process, a Notice of Rights indicates that Defendant was read, in Spanish, the fact that he had a right to a hearing before an Immigration Judge, and that if he wanted a hearing he could retain counsel or other legal representative to assist him. (Dkt. 32, Ex. 4). He was read the fact that he had a right to contact a lawyer to represent him at the hearing or to answer any questions about his rights under the law of the United States. In response, Defendant placed his initials by the option to admit he was in the United States illegally, that he was not in danger in returning to his home country, and renounced his right to a hearing before the Immigration Court. Defendant then signed the statement. (Dkt. 32, Ex. 4).

Defendant subsequently made a sworn statement which was taken by a Border Patrol Agent who included the following prior advisement:

> You do not appear to be admissible or to have the required legal papers authorizing your admission into the United States. This may result in your being denied admission and immediately returned to your home country without a hearing. . . . This may be your only opportunity to present information to me and the Department of Homeland Security to make a decision. . . . Except as I will explain to you, you are not entitled to a hearing or review.

(Dkt. 32, Ex. 3). The advisement informed Defendant about United States law protecting certain persons who face persecution, harm or torture upon return to their home country. (*Id.*). Defendant answered "NO" when asked if he had any fear or concern about being returned to his home country or being removed from the United States and "NO" when asked if he would be harmed if he was returned to his home country or country of last residence. (Dkt. 32, Ex. 3).

Defendant was indicted under 8 U.S.C. § 1326(a) on November 20, 2018. The Grand Jury charged that on or about October 16, 2018, in the Western District of Virginia, Antonio Paredes Perez, an alien who was removed from the United States on or about March 27, 2013 and October 23, 2013, was found in the United States without having obtained the express consent of the Attorney General of the United States and the Secretary of the Department of Homeland Security to reapply for admission into the United States. (Dkt. 18).

## II.    LEGAL STANDARD

Criminal defendants may allege defects in indictments in pretrial motions, including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F. Supp. 2d 634, 636 (W.D. Va. 1999). Motions to dismiss indictments, therefore, should generally be denied unless the defendant demonstrates that "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

Defendant was indicted for a violation of Title 8, United States Code, Section 1326(a), Reentry of removed aliens. To obtain a conviction under 8 U.S.C. § 1326(a), the Government must prove beyond a reasonable doubt that the defendant is an "alien who - (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States," with certain exceptions not applicable here. A valid "deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

# III.   ANALYSIS

The parties dispute whether Defendant can collaterally attack the validity of Defendant's expedited removal order and, if so, the proper outcome of that collateral attack. Defendant's motion to dismiss is based on a collateral attack to prosecution under 8 U.S.C. § 1326(d). (Dkt. 32 at 1). The Defendant was previously removed from the United States by order pursuant to an expedited removal proceeding.[1] He now argues that under *United States v. Mendoza-Lopez*, 481 U.S. 828, 838-39 (1987), a person charged with a violation of Section 1326 has a due process right to judicial review of the predicate expedited removal "in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of the criminal offense." (Dkt. 32 at 2-3 (quoting *Mendoza-Lopez*)). Defendant argues that the scope of *Mendoza-Lopez* includes an expedited removal proceeding, and review of the predicate removal order may be undertaken pursuant to 8 U.S.C. § 1326(d). He further argues that upon judicial review the Court should find that the prior removal was invalid because it was fundamentally unfair.

Before examining the arguments of the parties, the Court will review relevant provisions of the United States Code and related regulations. Under 8 U.S.C. § 1225(b)(1) ("Expedited Removal Statute") and its companion regulations, at the time of Defendant's 2013 removal two classes of aliens were subject to expedited removal if immigration officers determined they were inadmissible due to misrepresentation of a material fact in seeking a visa, other documentation or admission to the United States or due to a lack of immigration entry papers: (1) aliens "arriving in the United States"; and (2) aliens encountered within 14 days of entry without inspection and

---

[1] References to the expedited removal statute, expedited removal or to expedited removal proceedings are to removal pursuant to 8 U.S.C. § 1225(b)(1). These proceedings are distinct from those applicable to some aggravated felons under 8 U.S.C. § 1228(b), which are also referred to as expedited removal proceedings.

within 100 air miles of any U.S. international border. 8 U.S.C. § 1225(b)(1)(A)(i) & (iii); 8 C.F.R. § 235.3(b)(1); *Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877-01, 2004 WL 1776983 (effective Aug. 11, 2004).

In such cases and upon proper findings, the immigration officer "shall order the alien removed from the United States without further hearing or review" unless the alien indicates an intention to apply for asylum or a fear of persecution upon return to his or her country. In cases where an alien indicates that intention or fear, the immigration officer must refer the alien for an interview by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(i), (ii).

In every case in which the expedited removal proceedings will be applied and before removing an alien, the examining immigration officer must create a record of the facts of the case and statements made by the alien. This is accomplished by means of a sworn statement using Form I-867AB. The examining immigration officer must read (or have read) all the information on Form I-867A to the alien (including the determination to be made, allegations of removability, citizenship, and the like). If the alien is willing to answer questions and give a statement, the examining immigration officer shall record the alien's response to the questions contained on Form 1-867B, and the alien shall sign and initial each page of the statement. 8 C.F.R. § 235.3(b)(2)(i). Further, the examining immigration officer must advise the alien of the charges against him or her on Form I-860 (Notice and Order of Expedited Removal), and the alien must be given an opportunity to respond to those charges in the sworn statement. 8 C.F.R. § 235.3(b)(2)(i), (b)(7). Interpretative assistance must be used if necessary to communicate with the alien. *Id.*

Under Section 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, --- U.S. ---, 138 S. Ct. 830, 836-37 (2018) (citing § 1225(a)(1)). "Applicants for

admission" must "be inspected by immigration officers" to ensure they may be admitted into the country consistent with U.S. immigration law. 8 U.S.C. § 1225(a)(3). The immigration officer (exercising delegated authority from the Attorney General) may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of expedited removal proceedings under 8 U.S.C. § 1225(b)(1). 8 C.F.R. § 235.4; *see* 8 U.S.C. § 1225(a)(4). The regulations further state that the "alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission." 8 C.F.R. § 235.4.

## A. Defendant May Bring a Collateral Challenge to an 8 U.S.C. § 1225(b)(1) Expedited Removal in a Prosecution under 8 U.S.C. § 1326(a)

The threshold question is whether Defendant is entitled to bring a collateral challenge to his prior expedited removal in challenging the Indictment. The Court concludes Defendant may collaterally attack an expedited removal order in an 8 U.S.C. § 1326(a) prosecution for the reasons stated in the Court's opinion in *United States v. Quinteros Guzman*, No. 3:18-cv-00031-1, 2019 WL 3220576 (W.D. Va. July 17, 2019), and in the Fourth Circuit's subsequent decision in *United States v. Villarreal Silva*, 931 F.3d 330 (4th Cir. 2019).

The issue arises because 8 U.S.C. § 1225(b)(1)(D) strips courts of jurisdiction in proceedings under § 1326(a) "to hear any claim attacking the validity of an order of removal" entered under the expedited removal provision of § 1225(b)(1)(A)(i). This Fourth Circuit in *Silva* concluded that it could not hear the merits of a defendant's attack on the prior order of removal before determining the effect of § 1225(b)(1)(D). 931 F.3d at 335.

In *Mendoza-Lopez*, 481 U.S. 828, 837 (1987), the Supreme Court, in addressing a prior version of § 1326, concluded that when a "statute envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the

deportation proceeding may have been, the statute does not comport with the constitutional requirements of due process." It explained that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a *criminal sanction*, there must be *some meaningful review* of the administrative proceeding." 481 U.S. at 837-38 (emphasis added). Thus, when the administrative order may be used to establish conclusively an element of a criminal offense, "[d]epriving the alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding may be used to establish an element of a criminal offense." *Id.* at 839.

The Fourth Circuit in *Silva* held that under the principles announced by *Mendoza-Lopez*, "removal - of whatever kind – when made an element of a criminal offense must be subject to some meaningful review, either administratively or during the subsequent prosecution. And while administrative and court review can undoubtedly be denied for expedited removals at the border, some meaningful review of such a removal cannot be denied when the government chooses to elevate the fact of removal to become an element in a criminal offense." 931 F.3d at 366. The Fourth Circuit concluded, as did this Court in *Guzman*, that § 1225(d)(1)(D)'s prohibition of a challenge to the validity of a prior removal order that forms the basis of an element under a § 1326 prosecution denies a defendant due process and "is unconstitutional as it operated in the circumstances of this case." *Id.*; *see Guzman*, 2019 WL 3220576, at *3-7 (finding § 1225(b)(1)(d) "constitutional   except to the extent it prevents *some* meaningful review" (quotation marks omitted)).

The Court, therefore, will consider Defendant's collateral attack on the expedited removal order which forms the basis of the alleged Section 1326(a) offense.

**B.    Defendant's Collateral Attack Fails Because He Has Not Established That Entry of His Prior Removal Order Was "Fundamentally Unfair"**

If Defendant is entitled to "some meaningful review," 8 U.S.C. § 1326(d) provides a framework for that review.  *See United States v. Moreno-Tapia*, 848 F.3d 162, 165-66 (4th Cir. 2017) ("Congress responded by codifying the principle of *Mendoza-Lopez* in 8 U.S.C. § 1326(d).").  To prevail on a motion to dismiss an indictment based on the invalidity of the underlying removal, an alien must demonstrate that --

> (1)    the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2)    the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3)    the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  "[T]hese three factors . . . are concerned with procedural irregularities in immigration proceedings that may insulate the resulting orders from judicial review, making it fundamentally unfair to rely on those orders in later criminal prosecution."  *Moreno-Tapia*, 848 F.3d at 166.

The Government addresses only whether the removal order was fundamentally unfair under § 1326(d)(3).  Thus, the Court need only consider whether Defendant demonstrates that the removal order was fundamentally unfair.  To demonstrate fundamental unfairness, a defendant must show that (1) his or her due process rights were violated by defects in the underlying deportation proceedings, and (2) he or she suffered prejudice as a result of the defects.  *El Shami*, 434 F.3d at 664-65; *United States v. Lopez-Collazo*, 824 F.3d 453, 460 (4th Cir. 2016).  Thus, the defendant bears the burden of establishing both that the deportation proceeding violated his or her due process rights and that the violation caused prejudice.  *United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014).

### 1. Defendant's Due Process Rights Were Not Violated

Defendant asserts that he had a due process right to counsel during his expedited removal proceedings. Defendant concedes that the record suggests he was notified he had a right to a hearing before an Immigration Judge and that if he wanted a hearing he could retain counsel or other legal representative to assist him "but not that he was told he had a right to counsel before answering any questions or deciding how to proceed with his case." (Dkt. 32 at 10). Defendant's counsel stated at oral argument that Defendant's position is based on a Fifth Amendment due process argument with respect to an ability to obtain counsel before questioning in an expedited removal proceeding. (*See also* Dkt. 32 at 10).

Defendant does not point to a specific provision of Title 8 which specifies a right to counsel in expedited removal proceedings under § 1225(b), although he does argue that the Administrative Procedures Act provides a right to counsel and applies to such proceedings. Rather, Defendant argues that the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), applies and warrants a finding that he had a due process right to counsel.

### a. Statutory and Regulatory Provisions

Defendant asserts that the failure to inform him that he had a right to counsel before answering any questions violated "fundamental due process and the regulations." (Dkt. 32 at 10). Defendant points to the regulatory provision that "the alien shall be given an opportunity to respond" to the charges of inadmissibility. *See* 8 C.F.R. § 235.3(b)(2)(i). Separately, Defendant asserts that the Administrative Procedures Act provisions regarding a right to counsel apply in expedited removal proceedings. (Dkt. 39 at 4-7).

Although Defendant appears to suggest the opportunity to respond includes a right to legal counsel in responding, the regulations do not support such a sweeping conclusion. The sentence

quoted by Defendant provides that the examining immigration officer shall inform the alien of the charges and "the alien shall be given an opportunity to respond to those charges in a sworn statement." 8 C.F.R. § 235.3(b)(2)(i). As shown by exhibits to Defendant's motion, Defendant was given that opportunity and a record of the facts of the case and statements made by Defendant were recorded. The documents in the record in this case track the regulatory requirements specific to the expedited removal process, which are described above.

Further, the implementing regulations demonstrate that the opportunity to respond did not imply a right to counsel. First, no such right is specified in the expedited removal proceedings statute or implementing regulations. Second, other statutes and regulations demonstrate that a right to counsel was not intended for those subject to § 1225(b) expedited removal proceedings generally. For example, Congress expressly provided that in a non-expedited removal proceeding the alien would have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings. 8 U.S.C. § 1229a(b)(4)(A); *see* 8 C.F.R. § 287.3 ("Except in the case of an alien subject to the expedited removal provisions [under § 1225(b)(1)(A)], . . . an alien arrested without a warrant and placed in formal proceedings . . . will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government. The examining officer will provide the alien with a list of the available free legal services provided by organizations and attorneys . . . ."). Similarly, Congress provided that those subject to expedited removal who are eligible for credible fear interviews "may consult with a person or persons of the alien's choosing prior to the interview or any review thereof." 8 U.S.C. § 1225(b)(1)(B)(iv). The record of Defendant's prior removal show that Defendant stated that he did not fear a return to his home country and, therefore, there was no need for a credible fear determination. (*See* dkt. 32, Ex. 3).

Defendant argues that even if the immigration regulations specific to expedited removal proceedings do not provide a right to counsel, the provision of the Administrative Procedures Act ("APA") regarding a right to counsel applies here. Defendant relies primarily on 5 U.S.C. § 555(b), which provides, in part: "A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel. . . . A party is entitled to appear in person or by or with counsel or other duly qualified representative in an agency proceeding." In a similar case, Defendant noted that the APA also provides that a "[s]ubsequent statute may not be held to supersede or modify [§ 555(b)] . . . except to the extent that it does so expressly." 5 U.S.C. § 559.

In *Marcello v. Bonds*, 349 U.S. 302 (1955), the Supreme Court held that the INA expressly superseded the hearing provisions of the APA. 349 U.S. at 308-10 ("[I]t is clear that Congress was setting up a specialized administrative procedure applicable to deportation hearings, drawing liberally on the analogous provisions of the [APA] and adapting them to the particular needs of the deportation process."); *see Ardestani v. I.N.S.*, 502 U.S. 129, 134 (1991). To be sure, the immigration statutes have changed since *Marcello* and in some situations the APA has been applied by the courts to certain immigration matters. Defendant cites to cases in which courts have applied other § 555(b) requirements to immigration proceedings but none of the cases address a right to counsel which is a part of an expedited proceeding itself.

The Court concludes that the APA's provision regarding representation by counsel does not apply to an expedited removal hearing under § 1225(b)(1). First, when Congress passed the legislation including the expedited removal procedures, it did so against the background of the holdings in *Marcello* and *Ardestani*, which had established the general proposition that the APA did not apply to immigration proceedings, at least with respect to hearings. Second, application

of the APA's provision regarding a right to counsel to expedited removals runs counter to the intent of a simplified, expedited process with limited issues considered. Third, and critically, when Congress intended an alien to have a right to counsel, it knew how to make that right clear as noted above. Congress would not have needed to do so in those other statutory removal provisions had it considered the right to counsel under the APA to apply generally to removal statutes. None of the cases cited to the Court apply the APA's right to counsel provision to a § 1225 expedited removal proceeding and the Court finds no indication that that Congress intended for the APA's right to counsel to so apply.

Defendant has not shown the violation of a due process right provided by the regulations or by the APA.

### b. General Constitutional Due Process

Defendant argues that he had a fundamental due process right to counsel during an expedited removal proceeding. Even if Defendant is an alien to whom the Due Process Clause applies because he entered the country at other than a port-of-entry, he fails to demonstrate that he had a due process right to counsel, at his own expense, or to be notified of that right, during his expedited removal proceeding. In *Mathews v. Eldridge*, which Defendant argues controls here, the Supreme Court considered whether a person whose social security disability benefits had been terminated had a right to an evidentiary hearing before termination. Under *Mathews v. Eldridge*, a court weighs three factors in determining whether a due process right exists: (1) the interest at stake for the individual; (2) the risk of erroneous deprivation of such interest and probable value of safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335. "The essence of due process is the requirement that a person in jeopardy of

12

serious loss (be given) notice of the case against him and opportunity to meet it. All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case." 424 U.S. at 348-49 (internal quotation marks and citations omitted) (alteration in original).

Defendant does not cite an opinion in which a court applied *Mathews* to find an alien in his position, and subject to a § 1225 expedited removal proceeding, to have a due process right to counsel. One opinion which applied *Mathews* to § 1225 expedited removal proceedings concluded that aliens subject to such proceedings who illegally enter the United States are not constitutionally entitled to counsel in such proceedings. *United States v. Peralta-Sanchez*, 847 F.3d 1124 (9th Cir. 2017), *opinion withdrawn*, 868 F.3d 852 (9th Cir. 2017), *and on rehearing*, 705 F. App'x 542 (9th Cir. 2017). The opinion, however, was withdrawn and on rehearing the Ninth Circuit disposed of the case under the prejudice prong of § 1326(d)(3) and did not undertake a further analysis under *Mathews*. 705 F. App'x 542. The original opinion found that with respect to an alleged right to obtain counsel in § 1225(b) expedited removal proceedings: (1) the nature of the private interest at stake was limited; (2) the risk of error was low; and (3) the Government's interest was substantial. 847 F.3d at 1135-39.

The Court finds instructive *dicta* from the district court's opinion in *Silva*. Although the court in *Silva* concluded the defendant in that case could not satisfy the prejudice prong of § 1326(d)(3) and was not entitled to relief, the court indicated that it had serious doubts as to whether the defendant could show a due process right to counsel in an expedited removal proceeding. The court noted that binding Fourth Circuit law holds that "because removal proceedings are not criminal proceedings, aliens facing removal are not entitled to the Sixth

Amendment's right to counsel, nor to the associated right to effective counsel." 313 F. Supp. 3d at 677 n.17 (quoting *Afanwi v.Mukasey*, 526 F.3d 788, 796 (4th Cir. 2008) (citing holdings of circuit courts), *vacated on other grounds by Afanwi v. Holder*, 558 U.S. 801 (2009)). The court noted that in briefing the defendant "appeared to unsuitably sidestep this binding law" by attempting to ground his asserted right to counsel at an expedited removal proceeding in the "procedural due process right to counsel" balancing test under *Mathews. Id.*

In *Silva*, defendant's counsel clarified at oral argument that he intended to rest his right-to-counsel argument on his Fifth Amendment right against self-incrimination in a soon-to-be-brought criminal proceeding and that his request for counsel at the removal proceeding was for the purpose of advising him on whether to invoke his Fifth Amendment right there. The district court concluded that that explanation did not change the court's analysis:

> Although declining to decide whether a Fifth Amendment right to counsel exists in the context of immigration proceedings, or whether the possibility of subsequent prosecution based on statements made in an immigration proceeding confers such a right, the Court notes that the Fourth Circuit has expressly held "there is no Fifth Amendment right to *effective* assistance of counsel during the course of removal proceedings." *Cruz v. Holder*, 321 Fed. Appx. 280, 281 (4th Cir. 2009) (per curiam) (emphasis added) (citing *Massis v. Mukasey*, 549 F.3d 631, 637 (4th Cir. 2008); *Afanwi*, 526 F.3d [526 F.3d 388] at 799). Given the Fourth Circuit's holding that no constitutional right to *effective* assistance of counsel under the Fifth Amendment exists in removal proceedings, *see id.*, the Court finds it unlikely that any right to assistance of counsel in removal proceedings exists under the Fifth Amendment at all. However, because [the defendant] fails to establish any prejudice resulting from any asserted due process violation, the Court need not reach that issue.

313 F. Supp. 3d at 577 n.17.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. Defendant received this due process. Aliens have a private interest in not being removed and thereby deprived of the opportunity to live and work in the United States and to not being barred from returning for at least

five years. The Government would entail additional fiscal and administrative burdens due to delays and associated costs which would not be otherwise incurred. With respect to a risk of erroneous deprivation, in § 1225 expedited removal proceedings the immigration officer is required to advise an alien of specific rights, to determine only whether the subject is an alien and whether he or she has valid documentation to enter or remain in the United States, and to make limited findings as noted above.[2]  *See* 8 U.S.C. § 1225(b)(1). Further, aliens who claim a fear of persecution if returned to their homeland, who seek asylum, or who claim to be a lawful permanent resident are entitled to further process under § 1225 before additional removal proceedings can take place. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4), (5). Under *Mathews*, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard . . . to ensure that they are given a meaningful opportunity to present their case." 424 U.S. at 348-49. In balancing the factors, the Court finds that on the record in this case, they do not warrant a finding of a right to counsel, or notice of a right to counsel, in Defendant's expedited removal proceeding. Further, Defendant in this case was informed of a right to a hearing before an Immigration Judge, and that if he wanted a hearing he could retain counsel or other legal representative to assist him.

---

[2] Few of the justifications given by Defendant bear any relevance to the Defendant. The more general the challenge to the expedited removal process as written, the greater the possibility of running afoul of 8 U.S.C. § 1252(e)(3). The Ninth Circuit in *United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011), held that courts could not address general attacks on the expedited removal process, finding that such claims were limited to actions filed in the United States District Court for the District of Columbia pursuant to 8 U.S.C. § 1252(e)(3). *See* 655 F.3d at 1086 n.10 ("Though [defendant] purports to raise general challenges to the expedited removal system in an effort to persuade us that they should not be permitted as predicates to § 1326 offenses, § 1252(e)(3) limits general jurisdiction over general challenges to expedited removal proceedings" to "action[s] instituted in the United States District Court for the District of Columbia"). The Defendant argues that aliens have a due process right to counsel in removal proceedings generally and failure to inform him of that right violates due process and the fairness of the proceeding *as to him*. (Dkt. 39 at 4).

Therefore, Defendant has not shown a violation of any due process right. As a result, Defendant cannot show that his expedited removal proceeding was fundamentally unfair and the resulting removal order invalid. Therefore, his motion to dismiss the Indictment will be denied.

> **2.** **Defendant Fails to Show Prejudice Because He has not Established a Reasonable Probability that He Would Have Been Allowed to Withdraw His Application for Admission and Avoided the Removal Order**

Even if Defendant was able to establish a violation of due process rights in the underlying removal process, the Defendant must also demonstrate that there was "a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 664-65 (considering the "likelihood" the Immigration Judge would have provided relief at issue in determining whether there is a reasonable probability that the alien would not have been deported). Because a Defendant must show a violation of due process in the denial of a right and prejudice from that denial, the Court need not consider the prejudice requirement of 8 U.S.C. § 1326(d) in light of its conclusion in the preceding subsection. In this case, however, if the Court were to reach the prejudice requirement, Defendant would have to show "a reasonable likelihood that but for the errors complained of, the defendant would not have been deported" pursuant to an order of removal. *See, e.g.*, *Silva*, 313 F. Supp. 3d at 678 (quoting *Wilson v. United States*, 316 F.3d 506, 511 (4th Cir. 2003), *abrogated on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006)).

Defendant argues that with counsel's advice there was a reasonable probability he could have withdrawn his application for admission and avoided the March 2013 removal order. Defendant relies on *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), in which the Supreme Court applied the "realistic probability" standard (which Defendant contends is indistinguishable from "reasonable probability") in the context of the categorical analysis applied to determine whether a state statute properly fell under a listed crime in a federal statute as an offense under

which certain aliens could be removed. The Supreme Court in *Duenas-Alvarez* held that: "To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special [] manner for which he argues." 549 U.S. at 193. Defendant then points to *United States v. Raya-Vaca*, 3:12CR5262-AJB (S.D. Cal.) (Dkt. 18-2), where, he asserts, immigration officers granted withdrawal of application to an individual who had previously been ordered removed, lied to immigration officers, and was convicted of a felony for the lie and was sentenced. Defendant asserts that his circumstances demonstrate he was more likely than Raya-Vaca to have been allowed to withdraw his application.

The immigration officer (exercising delegated authority from the Attorney General) "may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application" in lieu of removal proceedings under 8 U.S.C. § 1225(b)(1). 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 235.4. The regulations further state that the "alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission." 8 C.F.R. § 235.4. *See also United States v. Santos-Pulido*, 815 F.3d 443, 446 (6th Cir. 2016) (no constitutional right to withdraw application).

*Duenas-Alverez* is not applicable here and *Raya-Vaca* is insufficient a comparison to establish that there was a reasonable probability Defendant would have been allowed to withdraw his application for admission had he the help of counsel. *Duenas-Alverez* did not address § 1326(d) but rather involved the question of whether the defendant could point to an example demonstrating that a state statute created a crime outside the generic definition of a listed crime in a federal statute. 549 U.S. at 193. Thus, a single example of a state statute being applied beyond the generic

definition of a listed crime in a federal statute would clearly demonstrate that the state courts did in fact apply the statute in a non-generic manner. That is not the case with respect to an immigration officer's discretionary decision to permit an alien to withdraw his application and the reasoning in *Duenas-Alvarez* provides no guidance of reasonable probability here. Further, if *Raya-Vaca* were given controlling effect, then every alien defendant who had less "bad marks" than any one person ever allowed to withdraw his application would assert that he or she was prejudiced because there was a reasonable probability that he or she would have been allowed to withdraw their application because Raya-Vaca was allowed to withdraw his. *See Silva*, 313 F. Supp. 3d at 681 ("applying the *Duenas-Alvarez* standard of 'realistic probability' to the circumstances before the Court improperly wrenches that standard from its context.").

Defendant turns to statistics to support his argument that there was a reasonable probability that he would have been permitted to withdraw his application, noting that the appellate decision in *Raya-Vaca* cited statistics that indicated that in fiscal year 2008 44% of aliens subject to expedited removal proceedings were allowed to withdraw their applications (down from 70% in fiscal year 2004). *United States v. Raya-Vaca*, 771 F.3d 1195, 1209 (9th Cir. 2014). The statistics did not include the year of Defendant's expedited removal, which occurred several years later. Of note, the court of appeals in *Barajas-Alvarado*, one of the opinions on which Defendant relies for being able to challenge his prior removal order, held that the defendant's argument that as a matter of statistics it was plausible he would have received permission to withdraw was foreclosed by a prior Ninth Circuit decision holding that a general statistic that "discretionary relief applications are granted fifty percent of the time" was insufficient to show plausibility of relief. 655 F.3d at 1091 (citing *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999)). Although statistics are not sufficient, they are not excluded from determining "reasonable

probability." Defendant, however, presents no evidence close in time to his 2013 removals, with the closest statistic showing a downward trend.

Defendant states that before mid-2013, which would include the time of his March 2013 removal, immigration officers considering whether to allow withdrawal of an application consulted a list of factors in the Customs and Border Protection Inspector's Field Manual, citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014). Defendant states that the current standards, if there are any, are unknown. (Dkt. 32 at 9-10). The Ninth Circuit in *Raya-Vaca* noted an INS Inspector's Field Manual which set out six non-exhaustive factors relevant to the question of relief: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. 771 F.3d at 1207.

Here, Defendant avoided a port-of-entry, which evidences an intent to evade inspection and shows a clear intent to violate the immigration laws. Defendant was at or around twenty-one years of age at the time of his 2013 removals. The record does not suggest Defendant was in poor health and there are no stated humanitarian or public interest considerations. The Defendant did not seek asylum though being offered the opportunity to do so. Further, Defendant had previously been apprehended by border patrol agents in 2005, who processed him for voluntary return to Mexico, and he immediately came back to and remained in the United States until he went to visit his mother in Mexico in 2013. It was after that visit that he was retained at the border on March 21, 2013. (Dkt. 39 at 1).

In addition, the Indictment alleges, and the record reflects, that Defendant was apprehended on a third return to the United States and his prior expedited removal order was reinstated on

October 23, 2013. (Dkt. 32, Ex. 2). Even had Defendant obtained permission to withdraw his application for admission with respect to the March 2013 entry and removed, by the time of his reentry in October 2013 he would have had two prior removals, although voluntary ones. This factor would, when combined with the factors discussed above, further reduced the probability that Defendant would have been allowed to withdraw his application for admission.

In light of the discretionary nature of the decision to permit a withdrawal of application and the above considerations, the Court concludes that Defendant has failed to demonstrate that there was a reasonable probability that had he had access to counsel that he would not have been deported under a removal order. Even if he had a due process right to counsel that was violated, Defendant has not shown the prejudice required by § 1326(d). *See Villarreal Silva*, 931 F.3d at 339 ("In sum, because [defendant] did not sufficiently demonstrate a *reasonable probability* that the Attorney General would have allowed him to withdraw his application for admission under § 1225(a)(4), [he] failed to show prejudice, as required to demonstrate that his removal was fundamentally unfair.").[3]

## IV.   CONCLUSION

Defendant has a right to "some meaningful review" of his prior expedited removal orders referenced in the Indictment. Defendant, however, fails to establish that the expedited removal proceeding was fundamentally unfair because he can show neither that his due process rights were

---

[3] In his discussion of the second prong of Section 1326(d) (prejudice), Defendant argues that he was a good candidate to apply for deferred action from deportation (aka "DACA") which was established in 2012, the same year the United States Citizenship and Immigration Service began accepting applications. Thus, Defendant asserts, the DACA program was in full force and effect when Defendant was subject to the expedited removal proceedings in March 2013. There is no evidence, Defendant states, that anyone informed Defendant he might be able to apply for DACA or evaluated for eligibility. (Dkt. 32 at 18). The Government responds by noting it has found no authority that an alien must specifically be advised of his right to apply for DACA. (Dkt. 35 at 7 n.3). Nor does Defendant appear to have cited any such authority.

violated by defects in the underlying deportation proceedings nor that he suffered prejudice as a result of any alleged defect.

Accordingly, the Court will deny Defendant's Motion to Dismiss the Indictment (Dkt. 32).

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTERED this 29th day of August, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE